**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| FRANK VALENZUELA, | ) | No. CV 12-8629-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 12, 2012, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on November 20, 2012, and December 4, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 8, 2013, that addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on September 21, 1959. [Administrative Record ("AR") at 55.]  He has an eleventh-grade education [AR at 191], and has no past relevant work experience.  [AR at 24.]

On May 4, 2009, plaintiff applied for Supplemental Security Income ("SSI") payments, alleging that he has been disabled since January 1, 1994,[1] due to a traumatic brain injury, a cervical spine fracture, nerve damage, pain in his head, legs, and knees, neck problems, high blood pressure, and forgetfulness.  [AR at 55, 59, 170-76, 186-92, 214-19.]  After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR 67-84.]  A hearing was held on April 5, 2011,[2] at which plaintiff appeared with counsel and testified on his own behalf.  [AR at 37-54.]  On April 22, 2011, the ALJ determined that plaintiff was not disabled.  [AR at 16-25.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

/

---

[1]  In his decision, the Administrative Law Judge noted that plaintiff previously received SSI payments from June 1998 to September 1999, and from November 2002 to May 2003.  He further noted that plaintiff filed prior applications for SSI payments on March 14, 2006, and February 13, 2007, which were denied at the initial levels on July 7, 2006, and April 20, 2007, respectively.  The ALJ stated that "[t]here is no basis to reopen the determinations on the prior applications."  [AR at 16.]  Plaintiff does not contend otherwise.  [See Joint Stipulation at 2-14.]

[2]  The first page of the hearing transcript reflects a hearing date of August 5, 2011 [AR at 37], but both the concluding notation in the transcript and the ALJ's decision reflect that plaintiff's hearing took place on *April* 5, 2011.  [AR at 16, 53.]  Further, the ALJ's decision was issued on April 22, 2011, which would have been before a hearing held on August 5, 2011.  [AR at 25.]

2

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

1 | equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

2 | Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

3 | If the claimant's impairment or combination of impairments does not meet or equal an impairment

4 | in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

5 | sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

6 | and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

7 | past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

8 | case of disability is established.  The Commissioner then bears the burden of establishing that

9 | the claimant is not disabled, because he can perform other substantial gainful work available in

10 | the national economy.  The determination of this issue comprises the fifth and final step in the

11 | sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

12 | F.2d at 1257.

13 |

14 | **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

15 | In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

16 | gainful activity since May 4, 2009, the date of the application.  [AR at 18.]  At step two, the ALJ

17 | concluded that plaintiff has the severe impairments of degenerative disc disease of the cervical

18 | and lumbar spine, depression, and anxiety.  [Id.]  At step three, the ALJ determined that plaintiff's

19 | impairments do not meet or equal any of the impairments in the Listing.  [Id.]  The ALJ further

20 | found that plaintiff retained the residual functional capacity ("RFC")[3] to perform "medium work" as

21 | defined in 20 C.F.R. § 416.967(c).[4]  Specifically, the ALJ found that plaintiff can "lift and carry 50

22 | pounds occasionally and 25 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6

23 | hours in an 8-hour workday, no ladder/rope/scaffold climbing, and avoidance of concentrated

24 | exposure to unprotected heights and dangerous machinery."  He further found that plaintiff "has

25 | _____

26 | [3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

27 |

28 | [4]   20 C.F.R. § 416.967(c) defines "medium work" as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

4

1    the mental residual functional capacity to perform jobs at the unskilled SVP[5] 1 and SVP 2 levels."

2    [AR at 20 (footnote added).]   At step four, the ALJ concluded that plaintiff has no past relevant

3    work. [AR at 24.]  At step five, the ALJ found, based on the application of the Medical-Vocational

4    Guidelines, that "there are jobs that exist in significant numbers in the national economy that

5    [plaintiff] can perform." [Id.]  Accordingly, the ALJ determined that plaintiff has not been under a

6    disability since May 4, 2009.  [Id.]

7

8                                        **V.**

9                             **THE ALJ'S DECISION**

10          Plaintiff contends that the ALJ failed to properly consider plaintiff's subjective symptom

11   testimony.  [Joint Stipulation ("JS") at 5-14.]  As set forth below, the Court respectfully disagrees

12   with plaintiff and affirms the ALJ's decision.

13

14   **PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

15          "To determine whether a claimant's testimony regarding subjective pain or symptoms is

16   credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028,

17   1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

18   objective medical evidence of an underlying impairment 'which could reasonably be expected to

19   produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344

20   (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the

21   claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively

22   suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons

23   for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504

24   F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).   The factors to be

25

26          [5]   Specific Vocational Preparation ("SVP") is the amount of lapsed time required by a typical
27   worker to learn the techniques, acquire the information, and develop the facility needed for
     average performance in a specific job-worker situation. Dictionary of Occupational Titles (4th ed.,
28   rev. 1991), App. C.

                                          5

considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. § 416.929(c).   If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

At the administrative hearing, plaintiff testified that he lives with his son and his friend.  [AR at 40.]  He further testified that on a typical day, he cares for his personal needs, cleans his room and the house, waters the plants for "an hour straight," watches television, picks up the mail, and walks to pick up his son from school.  [AR at 46-48.]  Plaintiff stated that he goes grocery shopping with a friend, and that he watches his son's baseball games -- which last approximately four hours -- "whenever [his son] wants [him] to go."  [AR at 48-49, 51.]  Plaintiff testified that as a result of his emotional and mental problems, he "start[s] cutting [him]self" or clips his fingernails "until they bleed."  [AR at 49.]  He also testified that he has problems with his memory and concentration, and that the reason he does not shop alone is because "[he] just [doesn't] know what to get," or forgets what he needs by the time he gets to the store.  [AR at 49-50.]  When plaintiff was asked whether he has difficulty concentrating at his son's baseball games, plaintiff stated, "No, not on baseball."  [AR at 51.]  Plaintiff reported that he receives mental health treatment twice a month at Palmdale Mental Health Center, and that he takes Zoloft and Abilify for his depression and mood swings.  [AR at 45, 52.]  He also reported that he goes to "the general hospital" for physical rehabilitation of his legs and lower back due to a car accident in 1994.  [AR at 45-46.]  Plaintiff states that he takes two additional medications, one of which is a nerve damage medication.  [AR at 46.]  When plaintiff was asked why he cannot work, he stated that after his car accident in 1994, he was in a coma and "when [he] woke up [he] was already on [S]ocial [S]ecurity."  He testified that "ever since then [he] didn't work no more [sic]," and after that time, he went to prison.  He concluded:

"so I never worked." [AR at 50.] Plaintiff testified that while he last used an illicit street drug in March of 2010, he has not used any illegal drugs since then. [AR at 41.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR at 23.] The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]." [Id.] At step two, as the record contains no evidence of malingering by plaintiff,[6] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting plaintiff's subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

The ALJ rejected plaintiff's subjective symptom testimony because he found that plaintiff's subjective complaints and alleged limitations: (1) "are out of proportion to the objective findings" in the record that the ALJ discussed; (2) "are not consistent with the treatment [plaintiff] receives"; and (3) "are not consistent with his activities of daily living." [AR at 23.] These are legally adequate reasons to discredit plaintiff's subjective symptom testimony.

First, the ALJ's finding that plaintiff's allegations concerning his subjective symptoms are "out of proportion to the objective findings" is supported by substantial evidence. While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's credibility (see Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding that while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider).

With respect to plaintiff's physical impairments, the ALJ noted that Dr. Sarah L. Maze performed a neurological evaluation of plaintiff on August 21, 2009. [AR at 20-21, 356-59.] The

---

[6] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

ALJ pointed out that upon physical examination, Dr. Maze found decreased range of motion in plaintiff's cervical spine, but also found normal motor strength in his bilateral upper and lower extremities, intact sensation throughout his upper and lower extremities, normal reflexes throughout, normal coordination, an ability to ambulate independently without use of an assistive device, and an ability to stand on heels and toes.  [AR at 21, 358.]  Next, the ALJ acknowledged that a February 23, 2010, MRI of plaintiff's cervical spine revealed "diffuse multilevel degenerative disc disease with mild spinal canal and neural foraminal stenosis at the C6-7 level."  [AR at 22; see AR at 386-87.]  The ALJ also pointed out, however, that the MRI did not reveal "evidence of any *significant* stenosis or nerve root impingement." [AR at 22 (emphasis added).]  Third, the ALJ stated that the lack of any gait disturbance or abnormalities in plaintiff's lower extremities during Dr. Maze's evaluation supported two of the ALJ's determinations: (1) that plaintiff had "made a good recovery" from his "right femoral bone fracture" during the 1994 car accident, and (2) that while a December 16, 2010, MRI of plaintiff's lumbar spine revealed moderate degenerative disc disease at L5-S1 [AR at 421], and a September 12, 2010, neurosurgical consultation note stated that plaintiff's motor strength in his lower extremities measured four out of five, and he was "unable to walk with plantarflexion" [AR at 437-38], "there is no evidence that these abnormalities were due to lumbar radiculopathy or that they persisted, or are expected to persist, for a 12-month period." [AR at 22.]  Finally, the ALJ stated that there is no evidence that plaintiff's symptoms from urgent care treatment records for right middle finger pain on June 21, 2010  [AR at 426-28], and left thumb numbness on August 18, 2010 [AR at 430-33], "have persisted, or are expected to persist, for a 12-month period."  [AR at 22.]  The ALJ accurately discussed the above objective findings, those supporting plaintiff's position and those contrary to his position, which make up the entirety of the medical evidence in the record concerning plaintiff's physical impairments.   He also accurately found that "[t]here is no evidence of disuse muscle atrophy that would be compatible with [plaintiff's] alleged level of inactivity."  [AR at 23.]  Thus, substantial evidence supports the ALJ's determination that plaintiff's assertion of disability due to the pain in his head, neck, knees, and legs, and the effects of his 1994 car accident, is "out of proportion" with the objective medical findings.

With respect to plaintiff's mental impairments, the ALJ noted that Dr. Maze's August 21, 2009, neurological and mental status examinations found that plaintiff had a good general fund of knowledge, unimpaired attention and concentration, normal intellectual functioning, and normal cranial nerves. [AR at 21, 23, 357.] The ALJ also pointed out that during an August 16, 2010, initial intake assessment at Palmdale Mental Health Center ("PMHC"), plaintiff reported being depressed and anxious, was diagnosed with major depressive disorder, and was assigned a Global Assessment of Functioning score of 50[7] [AR at 395-99], but that he was subsequently assigned a GAF score of 65[8] in a September 29, 2010, PMHC treating note [AR at 416-18]. [See AR at 23.] Finally, the ALJ noted that a November 30, 2010, PMHC progress note showed a "normal mental status examination" [AR at 411], and that a December 2, 2010, PMHC progress note reflected a report by plaintiff of less depression and better sleep after using Lexapro [AR at 402]. [See AR at 23.] The November 30, 2010, mental status examination findings reflect that plaintiff was well-groomed, calm, cooperative, and linear. [AR at 411.] The ALJ fairly summarized the mental health records from the period following plaintiff's most recent release from prison on April 6, 2009 [AR at 357], and thus substantial evidence supports the ALJ's conclusion that the objective findings in the record are inconsistent with plaintiff's assertion of disability due to his mental health problems.

Second, the ALJ found plaintiff's testimony to be inconsistent with his level of treatment, citing several specific examples. The ALJ noted that plaintiff has not received "regular and

---

[7]    A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. 2000) (hereinafter, "DSM IV"). A rating of 41-50 on the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See DSM-IV, at 34.

[8]    A GAF score from 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." See DSM-IV, at 34.

9

ongoing treatment for [his] physical complaints." [AR at 23.] This is accurate, as the period from August, 2009 to December, 2010 reflects only six treatment records for physical problems -- Dr. Maze's August 21, 2009, neurological evaluation (which was performed at the request of the Social Security Administration in connection with plaintiff's application); the two MRIs dated February 23, 2010, and December 16, 2010; the September 12, 2010, neurosurgical consultation note for plaintiff's back pain; and the two urgent care notes for plaintiff's right middle finger and left thumb problems (all discussed supra).  In addition, the ALJ observed that plaintiff "has not been fully compliant with attending follow up appointments at Palmdale Mental Health Center," which is accurate, as plaintiff missed appointments on October 20, 2010, November 3, 2010, and November 8, 2010.  [AR at 404-05, 414.]  Finally, the ALJ stated that there is "evidence of substance abuse after the current application filing date [of May 4, 2009], and as recent as May 2010."[9]  [AR at 23.]  The ALJ concluded that "[i]t is reasonable to assume that if [plaintiff] were experiencing the disabling problems alleged, he would have received regular and ongoing treatment, he would have been fully compliant with treatment, and he would not have engaged in substance abuse."  [Id.]  The inconsistencies the ALJ identified between plaintiff's treatment and his testimony constitute a legally adequate reason to discount his credibility.  See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may properly discredit a claimant's testimony based on contradictions between that testimony and the relevant medical evidence); see also Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)) (internal quotations omitted) (an ALJ may properly rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to discredit a claimant's subjective symptom testimony).

Finally, the ALJ rejected plaintiff's statements because he found that plaintiff's daily activities are inconsistent with his allegations concerning the severity of his symptoms, citing plaintiff's ability to care for himself, perform basic house and yard work, shop, watch television,

---

[9]    The ALJ states earlier in his decision that plaintiff "testified he last used drugs in May 2010" [AR at 20], but plaintiff actually testified that he last used drugs in March 2010.  [See AR at 41.] Nevertheless, the Court does not find that the ALJ's inaccuracy in this regard detracts from his conclusion.

1  repair watches [AR at 357], and attend church, traffic school, and Narcotics Anonymous meetings
2  once a week [AR at 397].  [See AR at 23.]  While plaintiff should not be "penalized for attempting
3  to maintain some sense of normalcy in [his] life" (Reddick, 157 F.3d at 722), it is acceptable for
4  the ALJ to consider plaintiff's daily activities in determining whether to credit his testimony
5  regarding the severity of his symptoms.  See Smolen, 80 F.3d at 1284.  In this case, the ALJ found
6  that plaintiff can perform medium work, which involves the ability to do a certain amount of lifting
7  and carrying, with periods of standing, walking, and sitting.  See footnote 4, supra; see also 20
8  C.F.R. § 416.967(c) ("If someone can do medium work, we determine that he or she can also do
9  sedentary and light work."); 20 C.F.R. § 416.967(b) ("a job is in [the] category [of light work] when
10  it requires a good deal of walking or standing, or when it involves sitting most of the time with
11  some pushing and pulling of arm or leg controls").  The tasks plaintiff regularly performs -- house-
12  cleaning; watering plants for an hour at a time; repairing watches; picking up his son from school;
13  shopping; going to his son's baseball games; and attending church, traffic school, and Narcotics
14  Anonymous meetings once a week -- are thus likely to be transferable to the environment of the
15  workplace.  Fair, 885 F.2d at 603 ("if, despite his claims of pain, a claimant is able to perform
16  household chores and other activities that involve many of the same physical tasks as a particular
17  type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not
18  prevent the claimant from working"); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995); Magallon
19  v. Astrue, 2011 WL 2791258, at *6 (C.D. Cal. July 15, 2011).

20      Because the ALJ provided clear and convincing reasons to discount plaintiff's allegations
21  of pain and other subjective symptoms, his credibility determination must be upheld.  See Green,
22  803 F.2d at 532.  Remand is not warranted.
23  /
24  /
25  /
26  /
27  /
28  /

## VI.

## <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 9, 2013

_____
                    PAUL L. ABRAMS
        UNITED STATES MAGISTRATE JUDGE